UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:26-CV-00047-CHB-EBA

COMMONWEALTH OF KENTUCKY, PLAINTIFF,

V. **REPORT AND RECOMMENDATION**

QCX LLC, *et al.*, DEFENDANTS.

*** *** *** ***

This matter is before the Court on the motion of Plaintiff, The Commonwealth of Kentucky, *ex rel.* Attorney General, Russell Coleman ("Commonwealth"), requesting an Order remanding the underlying action to the Franklin Circuit Court. [R. 27]. The Defendants filed a response in opposition, [R. 35], to which the Commonwealth filed a Reply. [R. 38]. Therefore, this matter is ripe for review.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 17, 2026, the Commonwealth filed a Complaint against Defendants QCX LLC, Blockratize Inc., QC Clearing LLC, and QC Tech LLC (collectively "Polymarket") in the Franklin County Circuit Court. [R. 1-1 at pg. 2]. QCX, LLC, QC Clearing LLC, and QC Tech LLC are limited liability companies and wholly owned subsidiaries of Blockratize, Inc. [*See* R. 2, 3, 4, 5]. The Commonwealth alleges that in concert with the other Defendants, QCX LLC advertises and operates an online sports betting operation in the Commonwealth of Kentucky without the licensing approval of the Kentucky Horse Racing and Gaming Commission. [R. 1-1 at pg. 4]. Specifically, the Commonwealth alleges that Polymarket operates a "prediction market" through which Kentucky residents can engage in unlicensed sports gambling. [*Id.*]. The market is an online

trading platform, through which users can place a wager on the outcome of a sporting event. [*Id.*]. The Commonwealth asserts the following claims:

> (1) Polymarket violated the Kentucky Consumer Protection Act (KCPA), KRS 367.100 et seq., by conveying the false impression that its unlicensed sports-wagering operations were lawful in Kentucky (Count 1);
> (2) Polymarket further violated the KCPA by unfairly and unconscionably operating sports gambling enterprises in blatant disregard for Kentucky law (Count 2);
> (3) Under the Kentucky Loss Recovery Act, KRS 372.005 et seq., the sports bets that Kentuckians have placed on Polymarket's platform are void and the Commonwealth is entitled to money lost gambling (Count 3); and
> (4) Polymarket is operating illegal gambling devices in contravention of KRS 528.010 et seq. (Count 4).

[R. 27-1 at pg. 12].

The day after the Commonwealth filed its complaint, Polymarket filed a notice removing the matter to the Eastern District of Kentucky. [R. 1]. Therein, Polymarket has two primary arguments for removal: (1) removal was proper under the 28 U.S.C. § 1442(a)(1) federal officer removal doctrine, and (2) removal was proper under 28 U.S.C. § 1441(a) and the *Grable* authority because federal-question jurisdiction exists. [*Id.* at 7, 14]. The Commonwealth now seeks to remand this action back to the Franklin County Circuit Court, arguing that this Court lacks subject matter jurisdiction. [*See* R. 27].

## LEGAL STANDARD

28 U.S.C. § 1442(a)(1) allows a civil action against "[t]he United States… or any officer (or any person acting under that officer) of the United States… for or relating to any act under color of such office" to be removed. Additionally, removal is also proper if "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A federal court generally has original jurisdiction where a federal question is raised or where diversity exists.

## ANALYSIS

Polymarket argues that there are two primary independent bases for federal jurisdiction in this case: (1) removal was proper under the 28 U.S.C. § 1442(a)(1) federal officer removal doctrine because Polymarket is "acting under" the Commodity Futures Trading Commission ("CFTC") and this suit directly "targets the very subjects that federal law delegates to Polymarket US," and (2) removal was proper under 28 U.S.C. § 1441(a) and the *Grable* authority because this case "necessarily turns on disputed and substantial questions of federal law" including the Commonwealth's claims regarding Kentucky's Loss Recovery Act ("LRA"), the Kentucky Consumer Protection Act ("KCPA"), and KRS 528.100. [R. 35 at pgs. 15, 21, 25-31]. Thus, Polymarket argues that removal was proper and that the Commonwealth's motion to remand should be denied. [*Id.*]. As it is Polymarket's burden to prove removal is proper, *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010) (citing *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)), the undersigned will address their arguments in turn below.

### I. REMOVAL UNDER THE FEDERAL OFFICER DOCTRINE

First, Polymarket argues that this Court has jurisdiction over the underlying action under the federal officer removal doctrine of 28 U.S.C. 1442(a)(1). Under this statute, Polymarket must plausibly allege that (1) it is a person "acting under" a federal officer, (2) the suit is "for or relating to any act under color of such office," and (3) it asserts "a colorable federal defense." *Chevron USA Inc. v. Plaquemines Par., Louisiana*, 608 U.S. 1, 5-6 (2026) (citations omitted).

Polymarket claims that, as a contract market, it acted under the "CFTC and its officers because federal law delegates to contract markets regulatory functions that the federal government otherwise would perform and subjects the exercise of those functions to the CFTC's standards,

review, examinations, and enforcement." [R. 35 at pg. 16]. In the context of the federal officer removal doctrine, a private firm acting '"under' must refer to a relationship involving acting in a certain capacity, considered in relation to one holding a superior position or office" and "typically includes subjection, guidance, or control." *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 151 (2007). "Precedent and statutory purpose also make clear that the private person's 'acting under' must involve an effort to *assist*, or to help *carry out,* the federal superior's duties or tasks." *Id.* at 152 (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1882). That does *not* include simply *complying* with the law. *Id.* The relationship typically arises when a private firm performs a task that "the Government itself would [otherwise] have had to perform." *Ohio ex rel. Yost v. Ascent Health Servs., LLC*, 165 F.4th 999, 1005 (6th Cir. 2026) (quoting *Watson*, 551 U.S. at 154).

Polymarket contends that because the CFTC approved it as a contract market under the Commodity Exchange Act ("CEA"), it acts under the CFTC in "exercise[ing] delegated federal authority" to promulgate rules and regulations to regulate the contract markets. [R. 35 at pg. 17]. Polymarket points to 7 U.S.C. § 7(d)(2)(A) to support its assertion that Polymarket does more than merely comply with the CFTC, claiming that Congress designated Polymarket with '"establish[ing], monitor[ing], and enforc[ing] compliance with [its own] rules' to carry out the CEA's broad objectives." [*Id.*]. However, this argument is not persuasive to this Court because, as Polymarket admits, Congress tasks Polymarket to establish, monitor, and comply to *its own* rules, not the CEA's. [*Id.*]. Requiring a contract market, like Polymarket, to police *its own* operations is not the transfer of a federal officer's duties. *See Watson*, 551 U.S. at 153. In fact, the Nevada District Court rejected this same argument raised by Polymarket. In that case, the Court held that "Polymarket's delegated functions fall within the 'simple compliance with the law"' and do not establish the relationship required for removal under the federal officer removal doctrine.

*Nevada ex rel. NV Gaming Control Bd. v. Blockratize Inc.*, No. 3:26-cv-00089-MMD-CLB, 2026 U.S. Dist. LEXIS 41671 (D. Nev. March 2, 2026). And, Polymarket does not show that the CFTC "itself would [otherwise] have [] to perform" the function of establishing and monitoring Polymarket's own rules as *Yost* provides is typical of these types of relationships—there is no evidence presented that the CFTC would start operating Polymarket's exchange should Polymarket fail to do so. *Yost*, 165 F.4th at 1005 (quoting *Watson*, 551 U.S. at 154).

Polymarket lastly argues that the CFTC's "coercive authority" over contract markets "to stay trading of and delist contracts, institute enforcement proceedings, and suspend or revoke a contract market's designation" shows the "subjection, guidance, or control" that *Yost* requires for Polymarket to be acting under the CFTC. [R. 35 at pg. 18, 20]. While this shows that CFTC has some authority over Polymarket, without any showing that Polymarket is assisting or helping to carry out the CFTC's own tasks, CFTC's authority to stay trading of and delist contracts, institute enforcement proceedings, and suspend or revoke a contract market's designation looks as though it is merely ensuring Polymarket's and other contract market's compliance with the CEA's rules. And, "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Watson*, 551 U.S. at 151. Therefore, this Court finds that Polymarket is not a person acting under a federal officer that authorizes removal under 28 U.S.C. § 1442(a)(1).

Because Polymarket fails to plausibly allege that it is a person acting under a federal officer, the Court's analysis under the federal officer removal doctrine does not reach the other two elements. Therefore, the Court will now consider Polymarket's second alleged basis for federal jurisdiction.

## II. Removal Under Federal Question Jurisdiction

Second, Polymarket argues that this Court has jurisdiction over the underlying action because the Commonwealth's claims "necessarily raise disputed and substantial questions of federal law." [R. 35 at pg. 25]. Generally, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule requires courts to "examine the well pleaded" allegations of the complaint and ignore potential defenses. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). The plaintiff is the "master of his complaint," and thus, any "state law claim cannot be 'recharacterized' as a federal claim for the purposes of removal." *Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 515 (6th Cir. 2003) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Accordingly, "a case may not be removed to federal court solely on the basis of a federal defense, even where the plaintiff anticipates the defense in their complaint and even where both parties concede that the federal defense is the only true question." *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, 2026 U.S. Dist. LEXIS 42867, at *8 (E.D. Ky. Mar. 3, 2026). (first citing *Franchise Tax Bd. of Cal. V. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13–14 (1983); and then citing *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (collecting cases)).

However, there are exceptions to the well-pleaded complaint rule. The exception that Polymarket relies on here is the substantial-federal-question doctrine, which holds that "a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under the state law depends on the validity, construction, or effect of federal law." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th

Cir. 2007) (internal citations omitted). Specifically, Polymarket relies on *Grable & Sons Metal Products, Inc., v. Darue Engineering & Mfg*., 545 U.S. 308, 310-11 (2005), which outlined a new framework for determining whether a substantial federal question exists, explaining that federal courts have jurisdiction over state law claims that "implicate significant federal issues." After *Grable*, the substantial-federal-question doctrine developed into three requirements: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski*, 501 F.3d at 568 (internal citations omitted). The Supreme Court has also suggested that jurisdiction under *Grable* is appropriate *only* where the case "presents a nearly pure issue of law, one that could be settled once and for all and would govern numerous [similar] cases." *Empire Healthchoice Assur. Inc., v. McVeigh*, 547 U.S. 677, 700 (2006).

As discussed, the Commonwealth alleges that Polymarket violated the KCPA, KRS § 367.100 *et seq.*; the LRA, KRS § 372.005 *et seq.*; and is operating illegal gambling devices in contravention of KRS § 528.010 *et seq.* [R. 27-1 at pg. 12]. As their complaint is solely comprised of state law claims, under the well-pleaded complaint rule the Commonwealth has not presented a federal question on the face of the complaint. Yet, Polymarket claims that federal jurisdiction exists because all the factors under the test for the substantial- federal-question-doctrine are met for several of the Commonwealth's claims.

### A. Kentucky Consumer Protection Act Claims

First, the Court will examine Polymarket's argument that the Commonwealth's first two claims, which arise under the KCPA, raise a federal issue. [R. 35 at pg. 29]. The first element of the substantial-federal-question doctrine is that the state-law claim must necessarily raise a

disputed federal issue. *Mikulski*, 501 F.3d at 568 (internal citations omitted). A court looks to the "elements" of the plaintiff's claim and asks if any element requires the plaintiff to apply federal law to the "facts of [its] case" in order "[t]o prevail." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Count one of the Commonwealth's Complaint alleges that Polymarket "repeatedly conveyed the false, deceptive, and misleading impression that the sports wagers that they offer through their prediction market are lawful, and not void, in Kentucky." [R. 1-1 at pgs. 23-24]. Polymarket argues that Kentucky Courts "have held that 'there can be no recovery under the KCPA' if 'the provisions of the [LRA] safe harbor statute make the wagers legal.'" [R. 35 at pg. 29] (quoting *Jacobs v. KRM Wagering, LLC*, 2023 WL 3397511, at *5 (Ky. App. May 12, 2023)." Therefore, Polymarket argues that to prove count one, the Commonwealth must "show that Polymarket US's event contracts are not 'authorized, permitted, or legalized'—requiring Plaintiff to contend with the CEA." [R. 35 at pg. 29].

The Commonwealth argues that it does not have to "affirmatively prove that alleged misconduct is *not* permitted by law under [the LRA safe harbor statute] in order to succeed on a KCPA claim," and Polymarket has not shown any authority to the contrary. [R. 38 at pg. 17]. First, the KCPA makes no mention of the LRA or its safe harbor statute. *See* KRS § 367.110 *et seq.* Second, even if the Commonwealth must prove that the Polymarket contracts were not authorized, permitted, or legalized, this "presents a defense, which cannot support federal question jurisdiction." [*Id.*]. Count one of the Complaint only asks one question: whether Polymarket misrepresented that its sports wagers were legal in Kentucky in violation of the KCPA. [*See* R. 1-1 at pgs. 23-24]. Thus, as no element of the Commonwealth's claim requires application of federal law, a disputed federal issue has not been raised. *Gunn*, 568 U.S. at 258.

Analyzing count two of the Commonwealth's Complaint made under the KCPA yields the same result: a disputed federal question has not been raised. In count two, the Commonwealth claims that Polymarket "violated the KCPA by engaging in unfair acts and practices in the Commonwealth of Kentucky through the unauthorized offering and facilitation of sports gambling within Kentucky." [*Id.* pg. 24]. Polymarket once again argues that this issue "necessarily requires Plaintiff to contend with federal law" as "Polymarket US's event contracts are lawful, valid swaps under the CEA." [R. 1 at pg. 17]. The Court disagrees. Again, only one question is being asked: whether Polymarket engaged in unfair acts and practices in violation of the KCPA. [*See* R. 1-1 at pg. 24].

Polymarket then contends that its event contracts are valid "swaps" as defined by the CEA. [R. 1 at pg. 17]. Because of this, Polymarket contends that the Commonwealth's ability to argue that Polymarket's event contracts are not authorized '"necessarily depends on the interpretation and application of the CEA and the scope of the CFTC''s exclusive jurisdiction.'" [*Id.*] (quoting *Ga. Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375, at *3 (M.D. Ga. Feb. 3, 2026)). However, as discussed in the Commonwealth's supplemental authority, [R. 39-1], the Sixth Circuit's recent decision in *KalshiEX LLC v. Schuler*, Nos. 26-3196, 26-5235 (6th Cir. September 25, 2026) answered an unsettled issue in this Circuit, holding that sports-event contracts held by Kalshi—a Polymarket competitor—are not "swaps" under the CEA. Further, the Court held that, even assuming sports-event contracts were swaps, the CEA neither expressly nor impliedly preempts state sports-gambling laws. [*Id*. at pg. 4]. Therefore, the question of whether the sports-event contracts fall within the CFTC's exclusive jurisdiction has now been resolved by the Sixth Circuit and the remaining issues only concern Kentucky law—making State Court the appropriate forum. [*Id.*].

Further, even if Polymarket brought a preemption argument, "federal preemption is an affirmative defense upon which the defendants bear the burden of proof." *Brown v. Earthboard Sports USA, Inc*., 481 F.3d 901, 912 (6th Cir. 2007) (quoting *Fifth Third Bank v. CSX Corp*., 415 F.3d 741, 745 (7th Cir. 2005)). And it is well settled "that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Therefore, the preemption argument cannot justify removal.

**B. LOSS RECOVERY ACT CLAIM**

Second, Polymarket argues that the Commonwealth's claim brought under the LRA, count three, implicates federal law. [R. 35 at pg. 13]. The Commonwealth asserts a claim under Kentucky's LRA, which renders gambling transactions void, *see* Ky. Rev. Stat. § 327.010, but includes an exemption for "betting, gaming, or wagering that has been authorized, permitted or legalized." Ky. Rev. Stat. § 372.005. Polymarket argues that the exemption language raises a federal question because the Commonwealth "must establish that Polymarket US's CFTC-regulated event contracts are not authorized, permitted, or legalized—a showing that will require Plaintiff to address federal law." [R. 35 at pg. 26] (internal quotations omitted).

This argument was rejected by District Judge Gregory F. Vantatenhove in a recent Order remanding a private party's Loss Recovery Act Claim against Kalshi Inc., Polymarket's competitor, to state court. *See Kentucky Gambling Recovery LLC v. Kalshi Inc*., No. 3:25-cv-00054-GFVT, 2026 U.S. Dist. LEXIS 42867 (E.D. Ky. Mar. 3, 2026). Therein, Judge VanTatenhove discussed that statutes having exemptions such as the Kentucky Loss Recovery Act, constitute affirmative defenses. *Id*. at *13 (quoting *Cunningham v. Cornell University*, 604

U.S. 693, 701 (2025)). Judge VanTatenhove went on to explain that while Kalshi raised compelling defenses to the Plaintiff's state law claims, "they are, nonetheless, defenses." *Id*. at *14. Judge VanTatenhove explained that "a case may not be removed to federal court solely on the basis of a federal defense, even where the plaintiff anticipates the defense in [its] complaint and even where both parties concede that the federal defense is the only true question." *Id*. at *8 (citing *Franchise Tax Bd. of Cal.*, 463 U.S. at 13–14).

Polymarket fails to provide a compelling reason for this Court to rule otherwise. Polymarket argues that a Kentucky Court of Appeals case, *Kirby v. Keeneland Ass'n, Inc.*, 672 S.W.3d 212 (Ky. Ct. App. 2023), held that the presence or absence of authorization under KRS § 372.005 is an affirmative pleading requirement, not an affirmative defense. [R. 35 at pg. 28]. However, this Court interprets the *Kirby* holding to mean "that the safe harbor provision arms defendants with a Rule 12(b)(6) defense, or its state-law equivalent." *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, 2026 U.S. Dist. LEXIS 42867, at *14 (E.D. Ky. Mar. 3, 2026). Thus, exemptions in the Kentucky Loss Recovery Act relied on by Polymarket constitute affirmative defenses, and a case may not be removed to federal court solely on the basis of a federal defense. Therefore, Polymarket has failed to meet its burden of establishing that the Commonwealth's claims necessarily implicate federal law. This case "cannot be squeezed into the slim category [of cases that] *Grable* exemplifies." *Mikulski*, 501 F.3d 555 at 574 (quoting *Empire Healthchoice*, 547 U.S. at 701).

### C. KRS § 528.100 CLAIM

Third, Polymarket argues that the Commonwealth's claim under KRS § 528.100 implicates federal law as it requires a showing that "Polymarket US's federally regulated event contracts are unlawful to succeed." [R. 35 at pg. 29]. Count three of the Commonwealth's Complaint alleges

that the Polymarket website and mobile apps are "gambling devices under KRS 528.010" which are "intended for use in the Commonwealth in violation of Chapter 528 of the Kentucky Penal Code." [R. 1-1 at pg. 28]. Critically, the Commonwealth's claim in count three simply requires a showing that Polymarket's website and mobile apps are gambling devices, but neither count three nor KRS § 528.100 make any reference to the *unlawfulness* of the devices Polymarket contends implicate federal law. [*See* R. 1-1]. Additionally, any defense to count three claiming Polymarket's website and mobile apps are lawful under the CEA creating, as Polymarket argues, a preemption issue, is just that, a defense. As stated above, "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Williams*, 482 U.S. at 393. Therefore, this preemption argument cannot justify removal. Because no federal issue has not been raised, removal under 28 U.S.C. § 1441(a) is improper.

## III. The Commonwealth's Request for Costs and Fees

The Commonwealth also requests that the Court to award its costs and fees incurred as a result of removal. [R. 27-1 at pg. 25]. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that the fee provision in the federal removal statute does not create a presumption in favor of awarding or denying fees of remand. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138-39 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141.

The Court will recommend the Commonwealth's request be denied. Many of Polymarket's arguments, while unsuccessfully brought in other circuits, have not yet been addressed by the Sixth Circuit. For example, even though now decided, at the time of briefing this issue, the Sixth Circuit had not expressly ruled on whether the CEA expressly preempted state sports-gambling laws. While the Sixth Circuit has now ruled on the issue, *see KalshiEX LLC v. Schuler,* Nos. 26-3196, 26-5235 (6th Cir. September 25, 2026), that case was not decided until after the underlying motion was fully briefed. Thus, at least some of Polymarket's arguments were not objectively unreasonable, and therefore Commonwealth is not entitled to costs and fees.

## RECOMMENDATION

Having considered the matter, and being otherwise sufficiently advised,

**IT IS RECOMMENDED** that the Plaintiff's Motion to Remand, [R. 27], be **GRANTED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed October 14, 2026.

**Signed By:**

***<u>Edward B. Atkins</u>*** EBA

**United States Magistrate Judge**